**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

In re:  AMERICAN
LAND INVESTMENTS LTD.,

     Debtor.

Case No. 3:23-bk-30539

Chapter 11

Judge Humphrey

_____

AMENDED CHAPTER 11
SUBCHAPTER V PLAN OF
REORGANIZATION OF
AMERICAN LAND INVESTMENTS LTD.
_____

DATED:  November 9, 2023        Respectfully submitted,

/s/ Paul H. Shaneyfelt_____
Paul H. Shaneyfelt (0065629)
315 Public Square
Suite 204
Troy, Ohio 45373
Telephone: (937) 216-7727
Facsimile: (937) 552-9954
E-mail: paulshaneyfeltlaw@gmail.com
*Attorney for Debtor and Debtor-in-Possession*

1

American Land Investments, Ltd., Debtor and Debtor in Possession (the "Debtor"), hereby submits this Amended Chapter 11 Subchapter V Plan pursuant to Section 1121(a) of the Bankruptcy Code and requests confirmation of the Plan pursuant to Section 1129 and Section 1191 of the Bankruptcy Code.  All holders of Claims and Interests entitled to vote to accept or reject the Plan should read the Plan in its entirety before voting to accept or reject the Plan.

## ARTICLE I: INTRODUCTION

Debtor filed its voluntary Chapter 11 case in the Bankruptcy Court on April 7, 2023. The Debtor is the owner of residential rental properties located in Miami County and Shelby County, Ohio.  Debtor also rehabilitates properties for resale following renovation.

A.    Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  There are different types of Chapter 11 designations. In this case, Debtor has chosen to proceed under a Subchapter V-Small Business Debtor Reorganization ("Subchapter V").  Pursuant to Subchapter V, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against interests in a debtor.  After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

B.    Explanation of the Process of Confirmation

Generally, acceptance of a plan by the creditors and equity interest holders is important. In order for a plan to be accepted by each class of claims, the creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. However, as set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of a plan discharges a debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Bankruptcy Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

C.    Voting Procedures

Unimpaired Class.  Claimants in Class 1, and 2 are not impaired  under the Plan.  Such Classes are deemed to have accepted the Plan.

Impaired Classes.  Claimants in Classes 3.0, and 4 are impaired  as defined  by Section 1124 of

the Bankruptcy Code. Debtor is seeking the acceptance of the Plan by Claimants in Classes 3 and 4. Each holder of an Allowed Claim in Classes 3 and 4 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the attached ballot. Class 5 shall not vote under the Plan.

D.      Best Interests of Creditors Test

        Section 1129(a)(8) of the Bankruptcy Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.  If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's unsecured creditors would be paid in full and they will also be paid in full under the Plan. The Plan however will allow Debtor to continue to operate its business which is a benefit to all creditors in classed 3, 4 and 5, and preserve the equity interest in the business. Accordingly, since the Plan proposes payment in full to all creditors, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II: DEFINITIONS

        Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but thatis used in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

1.      *"Administrative Expense"*  shall mean any right to payment constituting a cost or expense of administration of the Bankruptcy Case of a kind specified under Section 503(b) of the Bankruptcy Code and entitled to priority under Sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including professional services.

2.      *"Allowed"* shall mean, with respect to (a) any Claim, (i) a Claim, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or (ii) a Claim that has been or hereafter is scheduled  Debtor as liquidated in amount or not disputed or contingent and, is scheduled by the debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objections to the allowance thereof has been filed.

3.      *"Bankruptcy Case"* shall mean the bankruptcy case commenced in the Bankruptcy Court by the debtor under Case No. 3:23-bk-30539 currently pending in the United States Bankruptcy Court, Southern District of Ohio.

4.      *"Bankruptcy Code"* shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code.

5.      *"Allowed Claim"* shall mean any claim against the Debtor filed before the claims bar date set by the Bankruptcy Court and is not subsequently objected to by the Debtor or such claim is scheduled by the Debtor as liquidated or not disputed or contingent.

6.      *"Bankruptcy Court"* shall mean the court in the Southern District of Ohio conferred with authority over the Bankruptcy Case or the court so authorized with respect to any proceedings in connection therewith for the purpose of such proceedings.

7.      *"Bankruptcy Rules"* shall mean the Bankruptcy Rules as in effect on the filing date, together with local rules adopted by the Bankruptcy  Court, or such similar rules as may be in effect from time to time in the Bankruptcy Cami.

8.      *"Cash"* shall mean cash, cash equivalents, or other readily marketable securities or instruments.

9.      *"Claim or "Claims"* means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10.      *"Claimant"* means the holder of a Claim or Interest.

11.      *"Class"* means all of the holders of Claims or Interests with respect to the Debtor as designed in a class in this Plan.

12.      *"Confirmation Date"* means the date of entry by the Bankruptcy Court of an Order confirming the Plan of Reorganization in accordance with the Code.

13.      *"Confirmation Order"* shall mean the order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Court.

14.      *"Consensual Discharge Order"* shall mean an Order of the  Bankruptcy  Court discharging the debtor pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent provided in and permitted by Section 1141(d) of the Bankruptcy Code, of any and all debts, claims and liens that arose at any time on the debtor, his assets, or properties, which debts, claims and liens arose at any time before the entry of the Confirmation Order, any debt of a kind specified inSections 502(g), 502(h) or 502 (i) of the Bankruptcy Code, whether or not:

   (a)      A proof of claim based upon such debt is filed or deemed filed under Section 501 of the bankruptcy code;
   (b)      A claim based upon such debt is allowed under Section 502 of the bankruptcy code;or
   (c)      The holder of a claim based upon such debt has accepted the Plan.

15.      *"Distribution Agent"* shall mean the reorganized debtor if the Plan is consensual or the

4

Subchapter V Trustee if the Plan is non-consensual.

16.      *"Effective Date"* shall mean the first day of the first full month after entry of the Confirmation Order.

17.      *"First Distribution Date"* shall mean February 1, 202.

18.      *"Impaired"* shall mean, with respect to any claim or class, the condition  or effects described in Section 1124 of the Bankruptcy Code.

19.      *"Interest"* means (i) the ownership interests in the Debtor and (ii) any right or option, however arising, to acquire an ownership interest or any other equity interest in the Debtor.

20.      "Last Class 4 Distribution Date" shall mean February 1, 2029.

21.      *"Net Excess Funds"* shall mean seventy-five (75%) of the Debtor's total cash on hand minus the pending accounts payable, including without limitation accrued wages and outstanding accounts payable but excluding future payables to Class 3.0, secured creditors under this Plan, calculated as of January  1st of each year.

22.      *"Non-Consensual Discharge Order"* shall mean an Order of the Bankruptcy Court pursuant to Section 1192 of the Bankruptcy Code, discharging the Debtor of any and all debts, claims and liens that arose at any time on the Debtor, its assets, or properties, which debts, claimsand liens arose at any time before  the entry of the Confirmation  Order that are provided  in Section 1 141(d)(l )(A) of this title, and all other debts allowed under Section 503 of this title and  provided for in the Plan, except;
(a) on the date the last payment is due after the 5 years fixed by the Court; or
(b) of the kind specified in Section 523(a) of this title.

23.      *"Petition Date"* shall mean April 7, 2023.

24.      "Plan Year" shall mean the full calendar years from the Effective Date.

25.      *"Plan"* shall mean the Debtor's Amended Plan of Reorganization, as amended, filed by the Debtor together with the exhibits.

26.      *"Priority Tax Claim"* means all Claims for Taxes entitled to priority under  Section 507(a)(8) of the Bankruptcy Code.

27.      *"Pro Rata Allocation"* shall mean with respect to the holder of an Allowed Claim in the Class of Claims, a fraction equal to such holder's claim  divided by the  total  amount of all claimsthe class.

28.      *"Reorganized Debtor"* shall mean the Debtor from and after the Effective Date.

29.      *"Retained Property"* shall mean (i) all other property of the Estate, and (ii) the Exempt Property which was not subject to administration but was retained by Debtor/Reorganized Debtor.

30.      *"Secured"* shall mean, with respect to any Claims, a Claim secured by a valid and unavoidable lien on or security interest in property of the Debtor, to the extent of the value of such lien or security

interest in accordance with Section 506(a) of the Bankruptcy Code, including, in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

31.     "*State Court Litigation*" means Case No. 21 DV 94, styled, *Angela Liette v. Duaine Liette*, in the Shelby County, Ohio Common Pleas Court.

32.     "*State Court Receiver*" means Matthew Sorg, the Receiver appointed pursuant to an Order entered in the State Court Litigation.

33.     *"Subordinated Claim"* means (i) any Claim, or portion of a Claim, that is subject to subordination under Section 510 of the Bankruptcy Code; and (ii) any Claim, or portion of a Claim, for fines, penalties, forfeitures, for multiple exemplary, or punitive damages, or other non- pecuniary, direct or non-proximate damages.

34.     *"Subchapter V Trustee"* means the individual appointed as trustee under Section 1183 of the Bankruptcy Code.

35.     *"Substantial Consummation"* shall mean one (1) business day after first payment is made to Minster Bank for its allowed secured claim.

36.     *"Subsequent Class 4 Distribution Date"* shall mean, for each Plan Year, each annual distribution to the Unsecured creditors until the Last Class 4 Distribution Date.

37.     *"Tax"* means and includes any federal, state, county, and local income, ad valorem, excise stamp and other tax of any type or nature whatsoever.

38.     *"Tax Claim"* means any and all Secured or Priority Claims of the Debtor for the payment of any Taxes: (i) accorded a priority pursuant to Section 507(a)(8) of the Bankruptcy Code; or (ii) secured by valid liens on the property of the Bankruptcy Estate existing on the Confirmation Date.

39.     *"Term"* shall mean the five (5) year period from the Effective Date.

40.     *"Unsecured"* shall mean, with respect to any Claim, a Claim to the extent of the amount of such Claim that (a) is not secured by any valid and unavoidable lien on or security interest in property of the Debtor or (b) is greater than the value and unavoidable lien on or security interest in property of the Debtor which secures such Claim.

<u>ARTICLE III: REPRESENTATIONS</u>

**NO REPRESENTATIONS CONCERNING DEBTOR IS AUTHORIZED BY DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRERESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREINSHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDTIORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE OHIO DEPARTMENT OF COMMERCE DIVISION OF SECURITIES, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

## ARTICLE IV: HISTORY

American Land Investments, Ltd., was formed as an Ohio limited liability company on November 25, 1997 by Duaine Liette.  Since that time, Duaine Liette has been the sole member of Debtor.  Debtor's headquarters are located in Sidney, Ohio and have been since its inception. Prior to 2021, Debtor was operated by Duaine Liette and his wife Angela Liette who was primarily responsible for Debtor's bookkeeping prior to her initiating the State Court Litigation.

A.    Events Leading to the Commencement of the Chapter 11

In 2021 Angela Liette initiated the State Court Litigation by filing for divorce.  During the State Court Litigation Debtor became aware that Angela Liette had absconded with significant amounts of money from Debtor's accounts.  In conjunction with this case, Rescom, Ltd., ("Rescom") also filed for relief under Chapter 11 on April 7, 2023, in Case Number 3:23-bk-20540. Rescom is also an Ohio limited company and Duaine Liette is the sole member of Rescom.  Like

ALI, Rescom's business is owning residential properties that it leases and it also rehabilitates properties to sell.

Following the initiation of the State Court Litigation, Angela Liette sought the appointment of a Receiver for both Debtor and ALI. In December 2021, the Court in the State Court Litigation appointed Matt Sorg as Receiver for both Rescom and ALI. The Receiver remained in control of Debtor's assets until just before the filing of the petition herein. The Receiver is an attorney whose primary office was located in Dayton, Ohio. The Receivership proved harmful to the Debtor and its business operations due to the Receiver's inability to deal with problems at Debtor's properties and the costs associated with the Receivership. The Receiver regularly was late making payments to Minster Bank and failing to collect rents due Debtor. Additionally, the Receiver was charging the estate between $3,000 - $3,500 per month.

Debtor did not believe that the receivership was sustainable, and would not lead to an actual reorganization of the Debtor. As a result, Debtor elected to file its bankruptcy petition in order to reorganize under the Bankruptcy Code.

B.     Risks and Benefits Related to the Reorganized Debtor

The risks associated with the Plan are that the Debtor will not be able to operate profitably going forward, and that the Debtor will not be able to liquidate its properties at the projected amounts to satisfy the claim of the secured and unsecured creditors. Debtor believes that those risks are relatively low, and Debtor believes that it will be able to operate and generate a dividend for its unsecured creditors.

The benefit of this Plan is that it will allow a small business to continue operations. The benefit to all creditors is that they will receive payment in full of their claims through Debtor's continued operations.

C.     Ongoing Operations

Debtor intends to continue the employment of Duaine Liette, who is an insider. Duaine Liette will be paid a salary of $24,000 during the each year of the first three (3) years following the Effective Date, and $12,000 per year for years four and five following the Effective Date.

ARTICLE V: LIQUIDATION ANALYSIS

The Debtor has interests in real estate. To the extent of Debtor's interest, almost all of the Debtor's real property has been pledged to Minster Bank, however, the Debtor has significant equity in its real property. If the business were to liquidate under Chapter 7 of the Bankruptcy Code. Under a Chapter 7 liquidation, the value of the funds available to unsecured creditors would be $252,022.51 **(See Exhibit 1)**. The values of Debtor's real estate were based upon values that the properties were appraised during the State Court Litigation. The liquidation analysis was based on the liquidation sale of the properties at auction which will result in a lower sale price than would be achieved under normal marketing and listing of the properties. This factor was conservatively determined to be ten percent (10%) of appraised value. Additionally, the values were reduced by ten percent (10%) for additional costs of sale. Additionally, under Chapter 7, there will be costs associated with maintaining the properties until liquidation. Based on the calculations, the unsecured creditors will receive payment in

full under the Plan, and will receive more than if the assets were liquidated in a Chapter 7 case, and that the Plan  is in the best interests of creditors. As set forth on Exhibit 1, the amounts that unsecured creditors will be paid under the Plan is $371.127.68 while they would only receive $252,022.51 under a Chapter 7 liquidation.  Additionally, under Chapter 7, there will be costs associated with maintaining the properties until liquidation.  Based on the calculations, the unsecured creditors will receive payment in full under the Plan, and will receive more than if the assets were liquidated in a Chapter 7 case, and that the Plan  is in the best interests of creditors.

## ARTICLE VI: PLAN PAYMENT AND COMMITMENT PERIOD

The Plan provides for a reorganization and restructuring of the Debtor's financial obligations.The Plan provides for a distribution to creditors in accordance with the terms of the Plan from the Debtor over the course of the Term, which is five (5) years from the Debtor's Confirmation Date. Classes 1 and 2, which consist of Allowed Administrative Expense Claims and Allowed PriorityTax Claims, shall be paid in full or provided with other treatment consistent with Section 1129(a)(9) of the Bankruptcy Code.

Class 3.0 consists of the Claims of Minster Bank, The Allowed Secured Claims of  Minster Bank is $535,588.90.  The Allowed Secured Claims shall be deemed fully paid, satisfied, and discharged when Minster has received payments having a total value equal to $535,588.90 plus the contractual interest rate owed to Minster Bank on each of its claims.  Reorganized Debtor shall satisfy the claims in Class 3.0 by making payments as required by each respective loan.

Any unpaid balance of the Allowed Secured Claim shall be due and payable on sale of the assets of the Reorganized Debtor or change in control of the Reorganized Debtor.   Should the outstanding balance not be satisfied upon such a sale or change in control, the successor to the Reorganized Debtor shall continue monthly payments to Minster Bank, as provided for herein. Notwithstanding anything to the contrary herein or under applicable law, the Allowed Secured Claim of Minster Bank shall not be discharged if the Reorganized Debtor otherwise completes this Plan.

For Class 4, Unsecured creditors holding Allowed Claims will receive distributions once a year of the Net Excess Funds.  The Net Excess Funds will  be distributed  *pro rata*  annually to Class 4 creditors on November 1st of each year beginning on the First Distribution Date and continuing on each Subsequent Distribution Date.

As outlined below, the Plan proposes to treat the following  categories  and  Classes  of Claims as follows:

| Class | Description | Treatment Summary | Voting Status |
|---|---|---|---|
|  |  |  |  |

| Class1 | Administrative Expenses | Paid in full in Cash or provided other treatment consistent with Section 1129(a)(9) | Non-voting |
| Class 2 | Priority Tax Claims | Paid in Cash or paid over the period provided for by Section 1129(a)(9)(c) | Non-voting |
| Class 3 | Minster Bank | Paid pursuant to loan agreemen ts | Voting |
| Class 4 | General Unsecured Claims | Paid from Net Excess Funds | Voting |
| Class 5 | Equity Interest | Retained | Non-Voting |

### ARTICLE VII: PROJECTIONS

The Debtor anticipates that it will be able to pay current operation expenses and fund the Chapter 11 Plan payments.  FocusCFO assisted in the preparation of the projections for the Plan based upon Debtor's historical revenues, historical expenses and information provided by Debtor relating to future sales of its real estate and costs associate with rehabilitating its properties.

As set forth above, Debtor was not in possession of its business for over one year during the time in which the Receiver was in place.  The Receiver did not turnover the books and assets of Debtor until March, 2023.  Since that time, Debtor has been working on reconciling Debtor's finances.

Additional fine details of this summarized assessment of the Debtor's business operations and anticipated growth were used to create a 5-year cash flow forecast.

These financial projections for December 1, 2023 to November 30, reflect disposable income (as defined by 11 USC § 1191(d) of, $88,320.00 which is sufficient to fund the Plan during the first year. Additionally, the financial projections for the Term show its ability to fund the Plan over the Term based on income from rental properties and anticipated sales of real estate.. **The Debtor's projections are attached hereto as Exhibit 2 which includes projections relating to the sale of Debtor's real property during the Plan.** With the assumption that the business operations of the Debtor will remain consistent or increase over the term of the Plan; the Debtor will be able to fund the Plan for the Term.

### ARTICLE VIII: CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

In accordance with Section 1123(A) of the Bankruptcy Code, all Claims and Interests are placed in the Classes set forth below. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is allowed.

CLASS 1:    <u>Administrative Claims under 11 USC 507(a)</u>

> *Description.* Class 1 consists of the Allowed Administrative Claims under Section 507(a) of the Bankruptcy Code and include Debtor's attorney's fees approved by the Court and payable to the law firm of Shaneyfelt & Associates, LLC the Subchapter V Trustee fees and Focus CFO fees. The Debtor's Bankruptcy Case will not be closed until all Allowed Administrative Expense Claims are paid in full. Class 1 Creditor Allowed Administrative Expense Claims are estimated as of the date of the filing of this Plan, after deduction of any deposits held by the claimants, to not exceed the amount of $18,000.00.

> If the Plan is confirmed pursuant to Section 1191(b), any and all Claims of a kind specified in Sections 507(a)(2) or 507(a)(3) of the Bankruptcy Code may be paid within one year from the Effective Date. The allowed Claims under Sections 507(a)(2) or 507(a)(3) will be paid on a monthly basis beginning on the first day of the month following the Effective Date or the date in which the Claims are approved in equal monthly installment that will allow Debtor to pay all of the Sections 507(a)(2) or 507(a)(3) Claims prior to the one year anniversary of the Effective Date. All Sections 507(a)(2) or 507(a)(3) Claims shall be paid by Debtor on or before the first anniversary of the Effective Date.

> *Treatment.* All Class 1 Claims that are due and owing as of the filing of the Plan shall be paid in full on or before the one year anniversary of the Effective Date.

> *Status and Voting.* Class 1 is unimpaired under the Plan.

CLASS 2:    <u>Priority Tax Claims</u>

> *Description.* Class 2 consists of certain Priority Tax Claims.

> *Treatment.* The Priority Tax Claims still outstanding as of the Effective Date will be paid in full in Cash or provided with other treatment consistent with Section 1129(a)(9) of the Bankruptcy Code within ten (10) business days after the later to occur of (1) the Effective Date or (2) such Priority Tax Claim becoming an Allowed Claim.

*Status and Voting.* Class 2 is unimpaired under the Plan.

CLASS 3:      Minster Bank

*Description.* Class 3.0 consists of the Claims of Minster Bank.

*Treatment.* Minster Bank shall be paid its Allowed Secured Claim pursuant to Section 502(b), which is currently estimated by the Debtor, with the information currently available to the Debtor, to be $439,116.95.  Based upon this amount, the Debtor proposes that Minster Bank shall receive a total payment of $439,116.95, plus interest at the rate set forth in each of the respective notes.  On the Effective Date, the maturity date in the obligation set forth in Proof of Claim 21 shall be extended beyond September 13, 2023, and the claim shall be paid by Debtor over the term of the plan in equal monthly payments at the interest rate set forth in the Promissory Note dated September 13, 2019.

*(a)* On the Effective Date and continuing on the same day of each month thereafter through fifty-nine (59) months from the Effective Date, the Debtor will make monthly payments to Minster Bank at the contractual amount that total $3,432.33 per month as of the date of the filing of the Plan.  Any payment by Debtor in excess of the monthly payment will be applied to principal and not to the next monthly installment; and

*(b)* Minster Bank shall retain its liens securing its Claim as security for the Debtor's obligation under the Plan, including the replacement liens as set forth in the *Agreed Interim Order Under 11 U.S.C. §§ 105(A), 361, 362, and 363, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rule 4001-2: (I) Authorizing Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (V) Granting Related Relief, All as to Minster Bank [Doc. 77].* Minster Bank's liens are valid, binding, enforceable, non-avoidable and perfected liens, and such liens shall continue to remain perfected without the necessity for filing or executing documents which might otherwise be required under non-bankruptcy law.

*Status and Voting.*  Minster Bank's  Class 3.0 is impaired under the Plan and, accordingly, is entitled to vote to accept or reject the Plan.

CLASS 4      General Unsecured Claims

*Description.* Class 4 consists of any Claim against the Debtor that does not fall within Classes 1, 2, or 3.

_Treatment_. Allowed Class 4 Claims shall be paid the _pro rata_ Net Excess Funds. Debtor estimates a distribution of approximately one hundred percent (100%) over the term of the Plan beginning on the First Class 4 Distribution Date and continuing on each Subsequent Calls 4 Distribution Date until the Last Class 4 Distribution Date.  To the extent that Edwin Liette's claims are also obligations of ALI, Edwin Liette will only be entitle to a single satisfaction of the whole amount owed to him by Debtor and ALI regardless of which entity makes the payment.

_Status and Voting_. Class 4 is impaired under the Plan and, accordingly, is entitled to vote to accept or reject the Plan.

CLASS 5        Equity Interest

_Description._ Class 5 consists of the ownership interest of Duaine Liette.

_Treatment_. Class 5 shall retain its ownership interest in the Debtor.

_Status and Voting_. Class 5 is not impaired under the Plan and shall not vote to accept or reject the Plan.

## ARTICLE IX: IMPLEMENTATION OF THE PLAN

A.    Operations between the Confirmation Date and the Effective Date

Debtor anticipates the continued operations of the business will be adequate to fund the Plan over the next five years.

B.    Operations of the Reorganized Debtor

In a consensual Plan, on and after the Effective Date, the Reorganized Debtor will implement the terms of the Plan. After the Effective Date, the Reorganized Debtor may buy, use, acquire and dispose of its assets, free of any restrictions contained in the Bankruptcy Code.

In a non-consensual Plan, the Debtor, in cooperation with the Subchapter V Trustee, will implement the terms of the Plan. After the Effective Date, the Reorganized Debtor may continue to operate subject to any restrictions contained in the Bankruptcy Code.

C.    Vesting of Assets in Reorganized Debtor in a Consensual Plan

Except as otherwise provided herein or in the Confirmation Order, as of the Effective Date of a confirmed Plan, the Retained Property and Exempt Property shall vest in the Reorganized Debtor free and clear of all liens, claims, interests or other encumbrances except as provided in the Plan. On or after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate its business and may use, acquire or dispose of property without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

D.      Vesting of Assets in Reorganized Debtor in a Non-Consensual Plan

Property of the estate includes, in addition to the property specified in Section 541 of the Bankruptcy Code: (1) all property of the kind specified in Section 541 of the Bankruptcy Code that Debtor acquires after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, whichever occurs first; and (2) earnings from services performed by the Debtor after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, whichever occurs first. As of the date that the case is closed, dismissed or converted to a case under Chapter 7, the Retained Property and any Exempt Property shall vest in the Reorganized Debtor free and clear of all liens, claims, interests or other encumbrances except as provided in the Plan. On or after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate its business and may use, acquire or dispose of property with the supervision or approval of the Subchapter V Trustee and the Bankruptcy Court.

## ARTICLE X: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The executory contracts set forth on with the parties listed on **Exhibit 3** attached hereto shall be accepted as of the Effective Date of the Plan and will be paid in accordance with its terms unless amended by agreement of the Debtor and applicable party. Any lease deficiency will be paid with interest on the Effective Date of the Plan.

## ARTICLE XI: PROVISIONS GOVERNING DISTRIBUTIONS

A.      Delivery of Distributions

1.      The first distribution under the Plan will be made as set forth in the Plan.

2.      If the Subchapter V Trustee is the Distribution Agent under the Plan, the Debtor will pay to the Subchapter V Trustee all amounts due to be distributed under the Plan fifteen (15) days prior to the First Class 4 Distribution Date.

3.      Subject to Bankruptcy Rule 9010, all distributions to holders of Allowed Claims shall be made by the Debtor (if consensual) or the Subchapter V Trustee (if nonconsensual) (a) at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Debtor has been notified of a change of address), (b) at the addresses set forth in any written notices of address change delivered to the Debtor after the date of such holders' proof of claim, or (c) at the addresses reflected in the Debtor's schedules if no proof of claim has been filed.

4.      For a non-consensual plan, notwithstanding Section 1194(b) of the Bankruptcy Code, Debtor shall make the payments directly to Minster Bank on its secured claims.

5.      At the close of business on the day before the First Class 4 Distribution Date, the claims register will be closed, and there will be no further changes in the record holders of any Claims. The Reorganized Debtor will have no obligation to recognize any transfer of any Claim occurring after the close of business on the First Class 4 Distribution Date, and will instead be entitled to recognize and deal for all purposes under the Plan (except as to voting on the Plan) with only those holders of record as of the close of business on the First CDistribution Date.

6.   If any payment to a creditor in a given year would be less than $50.00, the Distribution Agent is authorized to hold that payment until the next year and pay both installments at the same time.

B.      Undeliverable Distributions

If any distribution with respect to any Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the Distribution Agent is notified of such holder's then current address, at which time all distributions owing to such holder shall be made to such holder without interest. All Claims for undelivered distributions shall be made within six (6) months of the Distribution Date. After such date, all unclaimed distributions shall revert to the Reorganized Debtor and the Claim of any holder or successor to such holder with respect to such distribution shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

ARTICLE XII: MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

The Debtor may alter, amend or modify this Plan under Section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. After the Confirmation Date, the Debtor may only alter, amend or modify the Plan in accordance with Section 1193(b) or (c), as applicable, of the Bankruptcy Code.

ARTICLE XIII: RETENTION OF JURISDICTION

A      Continuing Jurisdiction of the Bankruptcy Court

Pursuant to Sections 1105(a) and l 142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction of these proceedings to the extent permitted by applicable law, including but not limited to:

1.   to determine any and all applications, adversary proceedings and contested matters pending as of the Effective Date;

2.   to determine any and all objections to the allowance of Claims;

3.   to determine any and all applications for allowance of compensation and reimbursement of expenses;

4.   to determine any and all controversies and disputes arising under or in connection with the Plan and such other matters as may be provided for in the Confirmation Order;

5.   to effectuate payments under and performance of the provisions of the Plan;

6.   to enter such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

7.   to determine the Reorganized Debtor's motion, if any, to modify the Plan in accordance with Section 1193 of the Bankruptcy Code;

8.   to issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

9.      to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any related documents;

11.     to hear and determine any issue for which the Plan or any related document requires a final order of the Bankruptcy Court;

12.     to enter a final decree closing the Bankruptcy Case;

13.     to determine any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

14.     to determine any increase or decrease in Debtor's monthly payment, as provided in the Plan;

15.     to approve, pursuant to Section 365 of the Bankruptcy Code, the assumption, assignment or rejection of any executory contract or unexpired lease, except as otherwise provided in the Plan;

16.     to determine a request for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation of parties entitled thereto.

B.      District Court Jurisdiction.

To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the Bankruptcy Court in this Article shall be deemed to be a reference to the United States District Court for the Southern District of Ohio.

## ARTICLE XIV: SPECIAL PROVISIONS

A.      Fees of Professionals

Professionals employed at the expense of the estate of the Debtor and entities that may be entitled to an allowance of fees and expenses from the estate of the Debtor incurred prior to the Confirmation Date pursuant to Sections 503(b)(2) through 503(b)(4) of the Bankruptcy Code shall be paid by the Reorganized Debtor from the direct funds, in Cash, and shall be paid within a year of the Effective Date after the order approving such allowance of compensation or reimbursement of expenses becomes a final order, or as provided in the Plan Debtor shall make regular monthly payments of administrative claim under Section 503(b)(2) through 503(b)(4) from its operating cash on a pro rata basis to the holders of such claims. With respect to the professional fee claims arising after the Effective Date, the Reorganized Debtor shall pay such professional fee claims in the ordinary course of its business without the necessity of any professionals being required to file an application for such professional fee claims.

B.      Exculpation and Limitation of Liability

On the Effective Date, the Debtor and all holders of Claims against and Interests in the Debtor will be conclusively deemed to release all professionals retained by order of the Bankruptcy Court in the Chapter 11 Case and all of such professionals, respective officers, directors,

employees, principals, partners and agents, and all officers and directors of the Debtor holding such offices at any time through the Effective Date from all liabilities, claims, costs, damages and expenses, except for Claims arising from fraud, willful misconduct or gross negligence to such persons, arising out of the Chapter 11 through the Effective Date.

C.  Subchapter V Trustee Disclosures and Fees

1.  For a non-consensual Plan, the Subchapter V Trustee shall continue to be paid at his hourly rate subject to fee applications under Section 330 of the Bankruptcy Code until the completion of the Plan. The Subchapter V Trustee shall file fee applications with the Court  at least once per year but not more frequently than every one hundred twenty  (120) days, and the Debtor will remit payment within thirty (30) days of obtaining approval.

2.  If the Plan is nonconsensual, the Debtor will provide any information to the Subchapter V Trustee that is reasonably requested in relation to the determination of any distribution.

D.  Bar Date for all Administrative Expense Claims

All requests for payment or any Administrative Expense Claim are subject to authorization and approval of the Bankruptcy Court.  Holders of Administrative Expenses Claims that do not file a request with the Bankruptcy Court and serve on all parties entitled to notice thereof no later than sixty (60) days after the Effective Date, are forever barred from asserting such claims except as provided in the Plan. Any objections to an Administrative Expense Claim shall be filed in accordance with the Bankruptcy Rules and the local rules of the Bankruptcy Court.

E.  Suspension of Payments

If payments under a non-consensual Plan are made by the Trustee, the Debtor may apply to the Court for suspension of payments due to circumstances for which the Debtor may not be held accountable, and any party may object to such suspension in payment. Notice of such request for suspension of payments shall be given to the Trustee, the United States Trustee and all affected parties. The Court, after notice and a hearing may suspend the payments for not more than ninety (90) days. Such suspension shall extend the length ofof the term of the Plan by the term of the suspension.

F.  Discharge Provisions

If the Plan is consensual, a discharge shall issue upon confirmation and the Debtor shall have made  the last distribution to the Unsecured creditors under the Plan.

If the Plan is nonconsensual, payments under the Plan will be made by the Trustee appointed by the Court and, except for the payments to Minster Banka discharge under Section 1192 shall be issued when the last distribution to the Unsecured creditors is made under the terms of the Plan.

G.  Protection of Creditors if Payments are not made under the Plan or any Amended  Plan

This provision is being made in accordance with § 1191(C)(3)(B): If the Subchapter V Debtors fail to make a payment under this Subchapter V Plan, any creditor may send notice by certified or overnight mail to the Subchapter V Debtors, the Trustee, and the UST of the default in payment, copying the Subchapter V Debtors' counsel. The Subchapter V Debtors will have 30 days from their receipt of the notice to cure any default in it making plan payments. If the Subchapter V Debtors do not timely cure the payment default, secured creditors shall not be bound by the discharge injunction as to their collateral and may proceed against any security interests. The rights of unsecured creditors shall be restored to proceed against the Subchapter V Debtors for the total amount of the debt owed, minus any payment received under the Subchapter V Plan and limited by any applicable discharge in the context of a consensual confirmation.

H**.**    Advances

Debtor shall be permitted to make advance payments pursuant to this Plan without any penalty. Except as otherwise  provided herein, any advance payment shall be treated and applied as a payment towards the next unpaid monthly payment amount due under this Plan.  Any amounts received from third-parties that are paid or credited by a creditor on debts covered by this Plan shall be considered an advance payment by the Debtor.  Monthly payments made in advance of their due date shall not alter the due date of any other payments to be made under this Plan.

I.      For Non-Consensual Plans

All of the Debtor's Net Excess Funds shall be paid  by the Debtor  and  applied  to the payment of creditors as provided for  in the Plan.

Beginning , on the First Class 4 Distribution Date and continuing annually until the last Class 4 Distribution Date the Debtor shall pay the Net Excess Funds. If a Trustee is serving as Disbursement Agent, any proposed adjustment shall be submitted to the Trustee and shall become effective unless, within fourteen (14)  days, the Trustee objects. If the Trustee objects and there is the no concurrence as to the proposed change, the Bankruptcy Court shall decide the issue.

J.      Treatment of Allowed Secured Claims

The amount of any Allowed  Secured Claim shall be that amount as proposed  in the Plan unless amended  pre confirmation  by an amended  Plan or by Court Order.  Unless specifically addressed in the Plan, any deficiency  amount for  a proposed Secured Claim shall be paid as an Unsecured Claim.

Holders of Secured Claims will retain their lien on their collateral only until the amount of their allowed Secured Claim  is paid in  full under  the Plan at which  time the lien shall  terminate and be released by the creditor.

Holders of judicial liens and non-purchase money security interest in personal property that impair exemptions which are avoided under Section 522(f)(1) shall be treated as  unsecured creditors.

K.      Interest Rate

Unless stipulated by the parties, ordered by the Court or provided for in this Plan, any fully Secured Claim shall be paid interest at the contractual rate set forth in the annual percentage rate of

10.255% based upon a declining monthly balance of the amount of the Allowed Secured Claim. Interest is included in the monthly payment amount. *See Till v. SCS Credit Corp.,* 541 U.S. 465 (2004).

No interest shall be paid on any Unsecured Claim.

L.    <u>Set Offs</u>

The Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever which the Reorganized Debtor may have against the holder of such Claim to the extent such claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor, of any such claim or counterclaim that it may have against such holder.

M.    <u>Manner of Payments</u>

Unless the person or entity receiving a payment agrees otherwise, any payment of Cash to be made by the Reorganized Debtor or the Distribution Agent shall be made, at the election of the Reorganized Debtor or the Distribution Agent as the case may be, by check drawn on a domestic bank or by wire transfer from a domestic bank; provided, however, that no Cash payments shall be made to a holder of an Allowed Claim unless the amount payable thereto is equal to or greater than Fifty Dollars ($50.00).

N.    <u>Time Bar to Cash Payments</u>

Checks issued by the Reorganized Debtor or the Distribution Agent on account of any Allowed Claim shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly, as applicable, to either the Reorganized Debtor or Distribution Agent by the holder of the Allowed Claim with respect to which such check originally was issued.

Any Claim in respect of such a voided check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and forwarded to the Reorganized Debtor who shall retain all monies related thereto.

O.    <u>Payments and Distributions on Disputed Claims</u>

No partial payments and no partial distributions shall be made with respect to a disputed Claim until the resolution of such disputes by settlement or final order. As soon as practicable after a disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim shall receive all payments and distributions to which such holder is then entitled under the Plan.

P.    <u>Approval of Executory Contract Rejection</u>

Entry of the Confirmation Order shall constitute approval, pursuant to Section 365(a) of the Bankruptcy Code of the rejection of any executory contracts and unexpired leases rejected pursuant

to the Plan. Notwithstanding anything contained herein to the contrary, the Debtor hereby retains the right to add or delete any executory contract or unexpired lease that is designated for rejection at any time prior to the Confirmation Date, upon notice to parties affected by such change.

Q.      Post-Filing Date Contracts and Leases

Executory contracts and unexpired leases entered into and other obligations incurred after the Petition Date by the Debtor shall, unless expressly rejected, be performed by the Reorganized Debtor in the ordinary course of its business affairs.

R.      Notice of Default

Unless expressly provided herein to the contrary, no claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to the Reorganized Debtor. Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor.

## ARTICLE XV: DISCHARGE OF ALL CLAIMS AND RELEASES

A.      Discharge pursuant to Section 1141(a)

Upon the granting of a discharge under Section 1141(d) of the Bankruptcy Code, the Discharge Order shall operate as a discharge pursuant to, and to the fullest extent provided in and permitted by, Section 1141(d) of the Bankruptcy Code, of any and all debts of, Claims against, and liens on the Debtor, its assets, or properties, which debts, Claims and liens arose at any time before the entry of the Confirmation Order, and any debt of a kind:

(1)      a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code;

(2)      a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or

(3)      the holder of a Claim based upon such debt has accepted the Plan as specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not the creditor has accepted the Plan.

B.      Discharge pursuant to Section 1192

As soon as practicable after the Last Class 4 Distribution Date unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Bankruptcy Court shall grant the Debtor a discharge of all debts provided in Section 1141(d)(l)(A) of this title, and all other debts allowed under Section 503 of this title and provided for in the Plan, except any debt:
(i) on which the last payment is due under the Term; or (ii) of the kind specified in Section 523(a) of this title.

<u>ARTICLE XVI: MISCELLANEOUS PROVISIONS</u>

A.      <u>Successors and Assigns</u>

The rights, duties and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors, heirs and assigns of such person.

B.      <u>Binding Effect</u>

The Plan shall be binding upon, and shall inure to the benefit of the Debtor, the holders of all Claims and Interests and their respective successors and assigns.

C.      <u>Modification of Payment Terms</u>

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim treatment is being adversely affected.

D.      <u>Valuation</u>

The amount of any Allowed Secured Claim shall be that amount set forth in the Plan unless the Court, prior to confirmation, orders otherwise.

Any claim for fees, costs, or other charges shall be made by the creditor by application to the Court. Such fees, costs or charges must be reasonable as required by Section 506(6) of the Bankruptcy Code.

E.      <u>Default and Waiver</u>

Any default of the Debtor that is not proposed to be cured in the Plan herein is deemed waived by the Confirmation of the Plan.

F.      <u>Transferred Claims</u>

If any creditor has transferred its claim by assignment or otherwise, the underlying debt shall be discharged as to the transferor and the transferee upon discharge unless otherwise provided in Sections 1141(d) or 1192, whichever is applicable. *See Fed. R. Bankr-. P.* 3001 (e)(2).

G.      <u>Substitution of Collateral</u>

If any collateral of the Debtor is substantially damaged while there is still an unpaid Claim which is secured by the collateral, the Debtor shall have the option of using the insurance proceeds to either repair the collateral, pay off the balance of the Allowed Secured Claim if the secured creditor is a named loss payee on the policy, or to substitute collateral by purchasing replacement collateral and the Subchapter V Trustee or the Debtor will continue to pay the secured claim.

H.      <u>Exempt Property</u>

The right to property exempt under Section 522 shall remain with the Debtor under any circumstance.

I.      Termination of Subchapter V Trustee

If the Plan is confirmed consensually, the Subchapter V Trustee shall be terminated upon Substantial Consummation.

If the Plan is confirmed non-consensually, the Subchapter V Trustee shall be terminated after the final distribution payment made pursuant to the terms of the Plan.

The Subchapter V Trustee shall be terminated upon dismissal of the case or its conversion to another chapter.

J.      Tax Consequences

Implementation of the Plan may result in federal income tax consequences to holders of claims, equity interest holders and to the Debtor.   In this case, most of the creditors will not be in full the amount of their Claims. Tax consequences to a particular creditor or equity interest holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the equity interest holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

A.      Risk to Creditors Under the Debtor's Plan

Claimants and equity interest holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be funds available to the Claims of creditors.

Dated November 9, 2023            */s/ Duaine Liette*
                                  Duaine Liette
                                  Sole Member
                                  American Land
                                  Investments, Ltd.